IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STATE OF ILLINOIS DEPARTMENT OF          )
HEALTHCARE AND FAMILY SERVICES,          )
                                         )      Consolidated Case
                      Plaintiff,         )      Case No.  06 C 6402 and 06 C 6412
          v.                             )
                                         )      Judge Virginia M. Kendall
U.S. DEPARTMENT OF HEALTH & HUMAN        )
SERVICES and MICHAEL O. LEAVITT,         )
Secretary U.S. Department of Health & Human   )
Services,                                )
                                         )
                      Defendants.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff, the State of Illinois Department of Healthcare and Family Services ("IDHFS" or "Illinois") seeks judicial review of two rulings by the Departmental Appeals Board ("DAB" or "the Board") of the U.S. Department of Health and Human Services ("HHS" or "Defendant"), which sustained the Centers for Medicare & Medicaid Services' ("CMS") disallowances of school-based administrative costs under the Medicaid program.[1] Defendant, Michael Leavitt ("Leavitt" or "the Secretary") is the Secretary of HHS and is responsible for the overall administration of HHS. The parties filed cross motions for summary judgment. For the reasons stated herein, Plaintiff's Motion for Summary Judgment is denied and Defendants' Motion for Summary Judgment is granted.

## I.      Statutory and Regulatory Framework

In 1965 Congress authorized the Medicaid program by adding Title XIX to the Social

---

[1] IDHFS initially filed two suits against HHS and Leavitt– one seeking judicial review of Decision No. 2021 and the other seeking review of Decision No. 2022.  Those cases were later consolidated before this Court.

Security Act, 79 Stat. 343. The program is "a cooperative endeavor in which the Federal Government provides financial assistance to participating States to aid them in furnishing health care to needy persons." *Harris v. McRae*, 448 U.S. 297, 308 (1980). Subject to the federal standards incorporated in the statute and the Secretary's regulations, each participating State must develop its own program describing conditions of eligibility and covered services. The program is administered by State Medicaid agencies with oversight provided by CMS. As part of the Medicaid program, the federal government contributes a percentage of the costs that states incur in providing medical services to their Medicaid-eligible populations. 42 U.S.C. § 1396b(a). School-aged children are a part of the Medicaid-eligible population, and thus, the statute envisions providing financial assistance to participating states to aid them in furnishing health care to needy school-aged children. A state may seek reimbursement for medical and administrative services to Medicaid-eligible school-aged children under Medicaid. 42 U.S.C. § 1396n(g)(2).

Two examples of approved Medicaid administrative functions that States provide to school-aged children are Medicaid outreach and services performed by skilled professional medical personnel ("SPMP") and their staff. Schools and other Local Education Agencies ("LEAs") that seek reimbursement from the federal government for the costs of Medicaid Outreach and SPMP services submit administrative claims based upon time studies in which participating school personnel document all of their time during a particular period using activity codes that distinguish between Medicaid-claimable administrative activities and non-claimable activities. An LEA's time study results are then used in conjunction with the LEA's cost data to generate an administrative claim.

After an administrative claim is generated, a State may seek reimbursement, or federal

financial participation ("FFP"), from the federal government.  States may only receive FFP for administrative activities that the Secretary finds "necessary" for "the proper and efficient administration of the State plan." 42 U.S.C. § 1396b(a)(2),(7).  CMS has the authority to determine whether a cost is necessary, and "whether all components of that necessary cost are 'allowable'" *New York v. Shalala*, 959 F. Supp. 614, 616 (S.D. N.Y. 1997), *aff'd* 143 F.3d 119 (2d Cir. 1998); *New York Dep't of Soc. Servs. v. Shalala*, 811 F. Supp. 964, 970-72 (S.D.N.Y. 1993) (deferring to Secretary and sustaining denial of enhanced 75 percent reimbursement rate).

"Reasonable" and "necessary" are related, but discrete concepts.  "'Necessary costs of administration are those that make the program run efficiently in accomplishing what it was intended to accomplish.  They need not be indispensable or the only possible way to reach the objectives, but costs that are tangential or unrelated to the specific goals of the program are not 'necessary.'" *New York State Dep't of Soc. Servs*., DAB No. 1636, 1997 WL 733948 at *7-8 (Nov. 18, 1997).  A cost is "reasonable," in turn, if "in its nature and amount, it does not exceed that which would be incurred by a prudent person under the circumstances prevailing at the time the decision was made to incur the cost." OMB Circ. A-87, Att. A, ¶C.2a.  CMS may consider various factors, such as whether the type of cost is generally recognized as necessary for the performance of the grant and the benefit received by the program.  *Id*.; *see also New York State Dep't of Soc. Servs*., DAB No. 1636, 1997 WL 733948 at *8.

There are different levels of FFP to reimburse states for a portion of the costs of administrative activities related to the Medicaid program.  Costs of most administrative activities are reimbursed at a rate of 50 percent.  42 U.S.C. §1396b(a)(7); 42 C.F.R. §433.15(a)(7).  In other words, states and the federal government share equally in the cost of most Medicaid administration.

42 U.S.C. § 1396b(a)(7); 42 C.F.R. § 431.15 (2007). The costs of some administrative activities, however, are reimbursed at an enhanced rate of 75 percent.

Illinois created its own activity codes to capture LEA and SPMP time spent performing school-based Medicaid outreach and SPMP administrative activities– Codes C1 and C2 for Medicaid outreach activities and Codes E2 and F2 for administrative activities of SPMP. Illinois submitted administrative claims to CMS seeking reimbursement for the activities of LEAs and SPMP under Codes C1, C2, E2, and F2. This dispute concerns CMS disallowances of Illinois's reimbursement claims under those codes and for the activities captured by them. Illinois appealed to the DAB who ultimately sustained CHS's disallowances of Illinois's claims for costs under C1, C2, E2, and F2.    A.    Medicaid Outreach versus Child Find

Illinois and HHS seek judicial review of the DAB's approval of CMS's disallowance of administrative costs associated with Medicaid outreach under activity codes C1 and C2. Outreach activities have long been a subject of disagreement between CMS and Illinois. The source of their disagreement concerns the difference between administrative activities under Medicaid outreach and administrative activities under the Individuals with Disabilities Education Act ("IDEA"). In short, administrative activities associated with Medicaid outreach are Medicaid-claimable whereas administrative activities associated with "child find" under the IDEA are not. *See* SSA §1903(a); 42 U.S.C. §1396(a); 20 U.S.C. §1400(d); 20 U.S.C §1401(9).

Understanding the difference between activities under Medicaid outreach and the IDEA is necessary in order to resolving the parties' motions. Medicaid outreach is commonly understood as "seeking out persons or groups who may be eligible for Medicaid to inform them of that possibility in order that they may come in for eligibility determination or may be made aware of

Medicaid services available to them." *New York State Dep't of Soc. Servs.*, No. 1636, at 6 (1997); 6412 AR 769, *id*. at 735-36 (Model Code 1.b). The federal government funds a portion of state expenses for administrative costs associated with Medicaid outreach. *See* SSA §1903(a); 42 U.S.C. §1396(a). On the other hand, the IDEA authorizes federal funding to ensure that all children with disabilities may receive a "free appropriate public education" that emphasizes "special education and related services designed to meet their unique needs." 20 U.S.C. §1400(d); *see* 20 U.S.C §1401(9). The IDEA begins with the statutorily mandated "child find" process, wherein:

> "All children with disabilities residing in the State,...regardless of the severity of their disabilities, and who are in need of special education and related services, are identified, located, and evaluated, and a practical method is developed and implemented to determine which children with disabilities are currently receiving needed special education and related services."

20 U.S.C. §1412(a)(3)(A); 34 C.F.R. §300.125(1)(1). Each student who is defined as potentially disabled must undergo an "initial evaluation" by a team of qualified professionals to determine whether the student is in fact a "child with a disability" with the meaning of the IDEA. 20 U.S.C. §1414(1)(1),(b)(2),(4),(c)(1); 34 C.F.R. §300.301. During this evaluation, the child "is assessed in all areas related to the suspected disability." 34 C.F.R.§300.304(c)(40). If the child is disabled, the team will prepare an "individualized education program" ("IEP") which describes the effects of the disability on the child's education performance, the goals for improvement, and the special education and related services" that will be provided. 20 U.S.C. §1414(d)(1)(A); 34 C.F.R. §300.320. Each child must be re-evaluated at least once very three years, and IEPs must be reviewed no less than annually. 20 U.S.C. §1414.(a)(2),(d)(4); 34 C.F.R. §§300.321; 300.343(c).

In summary, Medicaid outreach involves informing potential Medicaid-eligibles of the

availability of Medicaid or assisting them in enrollment whereas the IDEA's "child find" provision requires the state to identify, locate, and evaluate all children with potential disabilities who are in need of special education or any related services.  *See New York State Dep't of Soc. Servs*., No. 1636, at 6 (1997); 6412 AR 769, *id.* at 735-36 (Model Code 1.b); 20 U.S.C. §1412(a)(3).  In this case, the DAB sustained CMS's disallowances of Illinois' request for administrative costs for Medicaid outreach using activity codes C1 and C2 because the Board believed that the activity codes actually captured activities incurred for "child find."

      B)    <u>Administrative Costs in Support of Skilled Professional Medical Personnel and their directly supporting staff</u>

Illinois and HHS also disagree regarding the DAB's decision to affirm CMS's disallowances of administrative costs incurred by SPMP and their staff under activity codes E2 and F2. Administrative activities of SPMP and their directly supporting staff are among the activities that receive a higher level of FFP.  The Medicaid statute provides that States shall receive FFP at a rate of 75 percent for sums "as are attributable to compensation or training of SPMP and staff directly supporting such personnel" so long as the functions are found necessary by the Secretary for the proper and efficient administration of the State plan.  42 U.S.C. §1396b(a)(2)(A); *see also* 42 C.F.R. §433.15(b)(5)(2007).  SPMP are defined as "physicians, dentists, nurses, and other specialized personnel who have professional education and training in the field or medical care or appropriate medical practice."  42 C.F.R. §432.2 (2007).  The regulation further defines "staff of other public agencies" to cover SPMP and directly support staff who are "employed in State or local agencies other than the Medicaid agency who perform duties that directly relate to the administration of the Medicaid program."  *Id.*

SPMP must be also in "positions that have duties and responsibilities that require those

professional medical knowledge and skills." 42 C.F.R. § 432.50(d)(iii).  According to the regulatory preamble, the function must require the SPMP's "[l]evel of medical expertise in order to be performed effectively."  50 Fed. Reg. at 46,656.[2]  CMS provided interpretative guidelines for SPMP related costs in the *Title XIX Financial Management Review Guide #1: Skilled Professional Medical Personnel* (Feb. 2002).  6402 AR 653-84.  In regard to permissible SPMP functions, CMS listed such activities as reviewing complex physician billing and participating in case management, including medical review or utilization review.  *Id.* at 663.  For the 75 percent enhanced rate to apply to the activities of supporting staff, they must be "secretarial, stenographic, and copying personnel and files and records clerks who provide clerical services that are directly necessary for the completion of the professional medical responsibilities and functions of the skilled professional medical staff."  42 C.F.R. §432.50(d)(1)(v) (2007).  SPMP "must directly supervise the supporting staff and the performance of the supporting staff's work."  *Id.*

Finally, states may receive enhanced FFP for SPMP administrative activities but not medical services.  CMS discovered that states were confusing activities that were administrative versus medical in nature, and therefore, CMS furnished guidance to assist states in properly claiming FFP to avoid double billing.  CMS's guide, *Medicaid and School Health: A Technical Assistance Guide* (Aug. 2007) (the "TA Guide") distinguished between administrative services and medical services as follows:

> Expenses cannot be claimed as administration if they are an integral part or
> extension of a direct medical or remedial service, such as patient assessment,

---

[2]  Regulations 42 C.F.R. §432.50(c) and (d) establish certain criteria that states must meet in order to receive the 75 percent match rate for the compensation and training of SPMP and their directly supporting staff.  *See* 42 C.F.R. §431.15(b)(5) (2007).  FFP rates greater than 50 percent "apply only to those portions of the individual's working time that are spent carrying out duties for which the higher rate is authorized."  42 C.F.R. §§432.50(c)(1) and (2) (2007).

patient education, counseling, development of the medical portion of an IEP or IFSP, or another physician extender activities. Such services are properly paid for as part of the payment made for the medical or remedial services....[Provides may not claim an additional cost as administrative costs under the state plan.

One example of a medical service performed by a SPMP on school-aged children that is not reimbursed at the enhanced rate is Early and Periodic Screening, Diagnostic and Treatment ("EPSDT").[3] Medicaid-eligibles under the age of 21 must undergo EPSDT which is a comprehensive and preventive children's health program that emphasizes early assessment and treatment. 42 U.S.C. §1396d(r). EPSDT requires periodic dental, vision, and hearing examinations and assessments, as well as periodic "screening services" that furnish comprehensive assessments of physical and mental health, physical examinations, immunizations, and laboratory tests. *Id*. Mandatory EPSDT benefits also include:

Such other necessary health care, diagnostic services, treatment and other measures described in [Section 1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services, whether or not such services are covered under the State plan.

42 U.S.C. §1396(r)(5).

The DAB's position is that Illinois's Codes E2 and F2 were pervasively flawed and covered activities beyond those traditionally recognized as SPMP administrative functions. Additionally,

---

[3] The TA Guide furnished EPSDT screening as an example of "case management" medical services that would not qualify as an administrative activity:
*Case management as a Medical Service*

Section 1905(r) of the Act requires states to provide any services included in section 1905(a) of the Act, when medical necessity for the service is shown by an EPSDT screen....Care coordination, including aspects of case management, has always been an integral component of the EPSDT program. The purpose of case management in the EPSDT program is to assist children in arranging and obtaining health and related services in their communities....Payment for case management services furnished under section 1905(a)(19) of the Act is as medical service at the FMAP rate.

the DAD found that Illinois's reimbursement claims at the enhanced rate were unreasonable and excessive.

**III.**  **Factual Background and the DAB's decisions**

A.  Factual Background

In 1999, the General Accountability Office ("GAO") published findings regarding abuses in school-based administrative costs in a report entitled Questionable Practices Boost Federal Payment for School-Based Services, GAO/T-HHS-99-148. 6402 AR 476-93. In ten states for which data was readily obtainable, the GAO found a five-fold increase over the past four years from $82 million to $469 million in "school districts' claims for administrative costs associated with school-based health services." *Id*. at 478. Michigan and Illinois accounted for the majority of the increases. *Id*. In April 2000, the GAO reiterated its concerns in a report to the Senate Finance Committee entitled Improper Payments Demand improvements in HCFA Oversight, GAO/HHA/OSI-00-69. 6402 AR 494-552. The GAO singled out Michigan and Illinois as the two states that accounted for "74 percent of all administrative activity payments" nationwide. *Id*. at 499.

In response, CMS issued its Medicaid School-Based Administrative Claiming Guide (May 2003)(the "CMS Claiming Guide"). 6402 AR 407-75. The CMS Claiming Guide contained a "model set of activity" codes and described the kinds of administrative activities that CMS determined necessary in schools. *Id*. at 441-53. Additionally, in November 2002, CMS wrote State Medicaid Directors a letter referred to as SMDL # 01-018 telling them that they could no longer claim enhanced reimbursement for SPMP because the administrative activities most suited for schools would not require medical expertise and SPMP were likely to be providing services or

implementing programs unrelated to Medicaid. 6402 AR 345-46.

Alone among the fifty states, Illinois elected not to comply with CMS' November 2002 letter or to generally following the CMS Claiming Guide. 6402 AR 769 ¶ 15 (Strauss Decl.) Instead, Illinois created its own guide entitled Illinois Guide for School-Based Services Administrative Claiming (2002) ("Illinois Claiming Guide"). 6402 AR 315-44. Two activity codes within Illinois's Claiming Guide were C1 and C2, for Medicaid Outreach activities, and E2 and F2, for administrative activities of SPMP. Illinois also submitted claims under Codes C1 and C2 seeking reimbursement at the enhanced rate for costs incurred after January 1, 2003. For reasons set forth below, CMS rejected the guide by disapproving activity codes C1 and C2 altogether and by denying enhanced SPMP reimbursement for Codes E1 and E2.

### 1.    Medicaid Outreach: Activity Codes C1 and C2

As previously stated, Illinois and CMS have a long history of disagreement over outreach codes C1 and C2. Outreach codes were meant to capture time spent identifying and referring children would benefit from Medicaid-funded services. 6412 AR 440-41; 6412 AR 568-70. Illinois repeatedly revised the outreach codes to describe more clearly the targeted outreach activities performed by school-based personnel and their linkage to the Medicaid program in the hopes to clarify the distinction between Medicaid outreach activity and child-find activity. 6412 AR 543-44. For example, on January 14, 2000, Illinois submitted a proposal for C codes that included "early identification of children with special medical needs through 'child find' activities." 6412 AR 1082, 1090-91. On April 28, 2000, CMS reminded Illinois that child find is a specific requirements of the IDEA and not necessary for Medicaid. 6412 AR 1107. CMS noted that not all "at risk" children are eligible for Medicaid– a financially based program. *Id*. at 1112.

On October 1, 2000, Illinois gave LEAs a new set of activity codes without obtaining CMS approval for them. 6412 AR 1119-39. Illinois split Code C in two parts: C1 recorded time spent "actively looking for children with special needs or who might be 'at risk,'" and included "[c]onducting Medicaid outreach campaigns and activities by assisting in early identification of children with special needs through 'childfind' activities." *Id.* at 1127-28. Code C2 included time spent by medical personnel in observing children to diagnose previously unidentified diseases and disabilities. *Id.* at 1128.

The back and forth between Illinois and CMS continued through July 11, 2001 when CMS objected, for a second time, to Illinois's cost allocation plan ("CAP") as it pertained to Codes C1 and C2. 6412 AR 1177, 1183-85. CMS's position was that Codes C1 and C2 captured activities aimed at achieving objectives of the IDEA that were not necessary for Medicaid. *Id.* On August 31, 2001, Illinois submitted revised activity codes that finally omitted overt references to child find in favor of "targeted outreach" terminology. The disagreement continued and on February 6, 2002, Illinois promised to change the C codes to "further clarify the distinction between Child Find and Medicaid Outreach." 6412 AR 1233.

In August 2002, Illinois sent the final version of the Illinois Guide to CMS. 6412 AR 602. In the final version, Codes C1 and C2 were entitled "Identification and Referral to Access Medicaid/Kid Care". Code C1 was to be used by all LEA staff while code C2 was to be used only by SPMP when using their medical expertise to identify medically at-risk children. The Illinois Guide also added Code C3 (a code not used to claim Medicaid funding) that was to be used when identifying and referring children to non-medical educational activities, including child-find and other IDEA activities. 6412 AR 586-87.

On March 6, 2003, CMS approved the Illinois Guide with certain exceptions and conditions. In particular, CMS disapproved Code C1 and C2 for improperly shifting IDEA child find costs to Medicaid. *Id.* CMS explained that although Illinois had attempted to distinguish between child find for "medical-related disabilities" and child find for "education-related disabilities," the codes' basic activities remained "for the purpose of Child Find." 6412 AR 1277, 1310. CMS once again stated that FFP is not available for the costs of activities required by and allocable to Child Find activities. *Id*. at 1310. One of CMS's conditions of approval was that Illinois would submit an amendment to its CAP to the HHS Division of Cost Allocation ("DCA") to ensure that the costs would be claimed "in accordance with the program approved by CMS." Illinois submitted the CAP as partly approved by CMS and the DCA approved it on that basis. As a result, Codes C1 and C2 themselves are not a part of the approved CAP. Illinois also unilaterally implemented a special allocation formula to apportion Code C1 and C2 costs between Medicaid and IDEA. 6412 AR 113. This formula was not in the Illinois Claiming Guide or in the approved CAP. 6412 AR 682 ¶ 18 (Brunelle Decl.)

Despite the fact that neither CMS nor the DCA approved Illinois's Codes C1 and C2, Illinois submitted an administrative claim under those Codes for activities it claimed were performed for Medicaid outreach. CMS disallowed Illinois reimbursement claims under Codes C1 and C2 on the basis that they captured activities devoted to child find and not Medicaid outreach.

2.     SPMP administrative activities under Codes E2 and F2

Illinois and CMS also worked together to draft Codes E2 and F2 which were meant to capture administrative activities of SPMP and their staff. As described above, section 1903(a)(2) of the SSA authorizes an enhanced rate of 75 percent for administrative activities of SPMP. For many years, Illinois and other states claimed the enhanced rate for administrative activities of SPMP

in schools. 6402 AR 305. Then, on November 2002, CMS wrote State Medicaid Directors stating that schools could no longer claim enhanced reimbursement for SPMP as of January 1, 2003. 6402 AR 345. As previously stated, CMS's position was that administrative activities most suited for schools would not require medical expertise and SPMP were likely providing services or implementing programs unrelated to Medicaid.[4] In other words, CMS believed that school-based SPMPs' advanced skills and training were not "necessary in order to perform the types of administrative activities that take place in school settings." 6402 AR 345. During this time period, Illinois and CMS worked together to create and approve drafts of the Illinois Claiming Guide. When the final version of the Illinois Claiming Guide was submitted to CMS for approval, CMS approved the Guide– save Codes C1 and C2. 6412 AR 602. CMS did not address its position on the language within Codes E2 and F2, but rather, CMS reminded Illinois the enhanced rate of 75 percent would not be available for SPMP administrative activities performed in schools on or after January 1, 2003. *Id*. After January 1, 2003, the regular 50 percent enhanced rate would apply to Medicaid-related activities of SPMPs in the school setting. *Id.*

Illinois submitted claims under Codes E2 and F2 for SPMP administrative activities in schools through January 1, 2003. CMS approved and reimbursed Illinois for those claims. However, when Illinois submitted its administrative claim to CMS seeking enhanced reimbursement for SPMP activities between January 2003 and September 2005, CMS disallowed reimbursement at the enhanced rate primarily relying upon the November 2002 letter to State Medicaid Directors.

---

[4] Illinois and CMS disagree over whether CMS accepted Codes E2 and F2 when it approved the Illinois Guide. Nonetheless, the agency's letter referencing its acceptance of the guide– save Codes C1 and C2– advised Illinois that it would no longer permit claiming at the 75 percent rate for school-based SPMP. Illinois proceeded to conduct time studies using E2 and F2 to capture school-based administrative functions.

DAB No. 2022, at 11 n. 7.

       B.      <u>The DAB's Decisions</u>

Illinois filed separate appeals with the DAB challenging CMS's disallowance of FFP for school-based outreach activities under activity codes C1 and C2 and the disallowance of an enhanced rate of FFP for school-based administrative activities performed by SPMP. On April 3, 2006, the DAB issued two decisions in which it affirmed both sets of disallowances.

In Decision 2022, the DAB affirmed CMS's disallowances of FFP for Illinois Schools' expenditures on Medicaid outreach codes C1 and C2. DAB No. 2022, at 3. The DAB's decision adopted CMS's position that Codes C1 and C2 captured IDEA child find activities. Specifically, the DAB held that widespread screening for medical conditions without reference to potential Medicaid eligibility did not qualify as Medicaid outreach and that Illinois's costs were unreasonable in magnitude. 6412 AR 198-219.

In Decision 2021, the DAB affirmed CMS's disallowances related to Illinois schools' expenditures for administrative activities performed by SPMP. However, the DAB did not adopt CMS's position that administrative activities of SPMP were automatically disallowed based upon the November 2002 letter. Rather, the DAB chose to adopt CMS's alternative positions set forth in its brief; namely, that Illinois had failed to prove its entitlement to enhanced reimbursement because of pervasive flaws contained in Illinois's activity codes E2 and F2 and the unreasonable magnitude of Illinois's claims.

**IV.**     <u>**Standard of Review**</u>

Judicial review of the Secretary's decision is governed by 42 U.S.C. §1395oo which incorporates the standard of review of the Administrative Procedure Act ("APA") under 5 U.S.C.

§ 706. *Board of Trustees of Knox County Hospital v. Shalala*, 135 F.3d 493, 499 (7th Cir. 1998).

Under the APA, a court must uphold an agency's decision unless it is "arbitrary, capricious, an abuse

of discretion," if its is unsupported by substantial evidence, or otherwise not in accordance with law.

*Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504 (1994) (*quoting* 5 U.S.C. § 706(2)(A)).  This

review is a deliberately "narrow one" with respect to issues of both fact and law.  *Indiana Dep't of

Pub. Welfare v. Bowen*, 686 F. Supp 692, 694 (S.D. Ind. 1987).  "[S]o long as the Secretary's

interpretation of the Social Security Act and implementing regulations... is rational, the court may

not disturb it, even if the court prefers an alternative interpretation.  *Id.* at 694.  Substantial evidence

in turn requires only such evidence as "a reasonable mind might accept as adequate to support a

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Because the APA standard affords

great deference to agency decision making and because the Secretary's action is presumed valid,

judicial review, even in summary judgment stage, is narrow.  *Visiting Nurse Assn. Gregoria Auffant,

Inc. v. Thompson*, 447 F.3d 68, 72 (1st Cir. 2006).

**V.**     **The DAB's decisions are neither arbitrary nor capricious and are supported by substantial evidence.**

   A.     The DAB's decision to uphold CMS's denial of Illinois's claims under Codes C1 and C2

The Secretary did not act in an arbitrary and capricious way, or without substantial evidence

in denying Illinois's claims under Codes C1 and C2.  In essence, the parties' present two competing

viewpoints of the necessary, reasonable, and efficient way to further Medicaid's outreach goals of

"seeking out persons or groups who may be eligible for Medicaid to inform them of that possibility

in order that they may come in for eligibility determination or may be made aware of Medicaid

services available to them." 6412 AR 2 (DAB NO. 2022).  Here, the DAB found that Codes C1 and

C2 focused upon identifying and assessing children with special health care needs *first* without regard to edibility or potential eligibility. In doing so, Illinois conducted widespread, and therefore costly, medical screening prior to determining whether the student was Medicaid-eligible. Illinois put forth evidence that identifying whether a child has medical needs first was the most logical, efficient, and successful way to reach out to potentially Medicaid-eligible students because "a family is much more likely to enroll a child in Medicaid when family members are aware that the child has medical needs." Pltf. Mtn., p. 22. Illinois's arguments, however, are essentially policy arguments put forth to justify its preferred method of conducting Medicaid outreach. This Court's task, however, is not to decide which among several competing interpretations best serves the regulatory purpose. *See Thomas Jefferson*, 512 U.S. at 517. Rather, the APA standard of review compels this Court to review the agency's decision under the arbitrary and capricious standard. As such, the DAB's interpretation of the Statutes need only be reasonable— and need not be the only reasonable interpretation. *New York*, 959 F. Supp. at 620-621. A review of the DAB's decision regarding Codes C1 and C2 under this standard fails to demonstrate that the Secretary's approach to Medicaid outreach was unreasonable.

The DAB concluded that Codes C1 and C2 captured activities that "cannot, under any accepted definition, be considered Medicaid outreach." 6412 AR 2 (DAB No. 2022). The DAB noted that Medicaid eligibility focuses upon financial need and not the applicant's health, 42 U.S.C. § 1396a(a)(10); *Schweiker v. Gray Panthers*, 453 U.S. 34, 36-38 (1981), and concluded that Codes C1 and C2 unnecessarily and inefficiently focused upon identifying medically at risk children first and financial edibility second. In other words, the agency determined that Illinois's targeted outreach campaign as described in C1 and C2 was not "necessary for the proper and efficient

administration of its Medicaid Program". DAB No. 2022, at 19-27.

A review of the language of Codes C1 and C2 supports the rationality of the DAB's decision. Instead of adopting CMS's model set of activity codes, Illinois drafted its own version– a version never approved by CMS. A description of the Code C1 in the Illinois Guide states: "Staff should use this activity code when actively *identifying potentially at risk children* in order to inform and assist the child and their [sic] family to access Medicaid/KidCare. This code should be used when specifically targeting outreach efforts to inform and enroll children with medical needs." 6412 AR 586-87 (emphasis added). The description of Code C2 states: "SPMPs should use this activity code when utilizing their medical expertise to *identify medically at risk children*, in order to direct outreach efforts to those who are most in need of medical services." *Id.* (emphasis added). The DAB's determination that the plain language of the Codes focusing primarily upon identifying medically at risk children first and Medicaid-eligible children second is rational. Moreover, Illinois conceded that LEAs did not consider financial status until after they completed efforts to identify medically "at risk" children. 6412 AR 18 (DAB No. 2022).

Because Codes C1 and C2 focused upon identifying medically at risk children first, the DAB concluded that Illinois's targeted outreach program was not necessary for the proper and efficient administration of the State plan. The Board's conclusion was not arbitrary and capricious. First, it is a reasonable conclusion that both outwardly healthy children and seriously ill children are eligible for Medicaid if they satisfy income and resource limits. Conversely, some children with disabilities or special needs whose family do not satisfy the financial criteria are not eligible. By prioritizing the identification of potential at risk children over examining eligibility ostensibly"healthy" children who are eligible for Medicaid will be missed while Medical would be

improperly charged for testing the medical conditions of ineligible children. The Board's conclusion that costly testing should come after a child is determined to be Medicaid-eligible is reasonable and cost-efficient. Moreover, it is reasonable to conclude that focusing upon Medicaid-eligibility first will not harm children who are "at risk" of serious medical conditions because mandatory EPSDT benefits will afford them comprehensive assessments and screening. 6412 AR 26 (DAB 2022).

Illinois put forth evidence that its targeted outreach program was the best way to identify and locate Medicaid-eligible students. Illinois Rep., p. 6. In Illinois's experience, States have greater success enrolling children in Medicaid when the children have medical needs. *Id.* While Illinois put forth evidence that its outreach program was significantly more successful in enrolling Medicaid-eligible students than approved efforts such as targeting low-income families, this Court does not assess the relative wisdom of varying possible approaches to administering the Medicaid Act. Instead, this Court must decide whether the DAB's decision was arbitrary and capricious giving due deference to the agency's determination of reasonable and necessary costs. *Thomas Jefferson*, 512 U.S. 504 (1994) (*quoting* 5 U.S.C. § 706(2)(A))

Finally, the DAB produced substantial evidence that Illinois's claimed costs were excessive.[5] Specifically, the DAB found that "[t]o the extent that its so-called 'targeted outreach' strategy encourages Medicaid enrollment of children who need Medicaid-covered health care, or access to Medicaid-covered services, the amount of costs claim for this purpose under codes C1 and C2 is clearly excessive and unreasonable." 6412 AR 2 (DAB No. 2022). The administrative record shows

---

[5] Because this Court finds that the DAB's conclusion that the wording of Codes C1 and C2 captured activities that were not necessary for the efficient administration of the program was neither arbitrary nor capricious and that the Board put forth substantial evidence that Illinois's costs were excessive, this Court will not address the parties' arguments regarding the "true intent" behind Codes C1 and C2– to seek Medicaid reimbursement for IDEA child find activities.

that Illinois claimed $95 million in outreach costs under Codes C1 and C2 which CMS disallowed and $47 million in outreach under Codes A1, B1, and D1 which CMS allowed.  When compared to the $868 million spent on Medicaid services to Illinois's school-aged children, the *allowed* outreach costs under A, B, and D codes alone for the school-based program amount to 5.4% of the services provided to children.  The agency put forth evidence that "administrative costs for the Medicaid program nationwide have hovered around five percent of total program costs."  6412 AR 25 (DAB No. 2022).  Illinois claimed twice as much under the disallowed Codes C1 and C2, or approximately "11 percent of total Medicaid services provided" to children.  Illinois Br. at 39 n. 37.  Adding the costs for the allowed codes to the disallowed codes yields a total ratio of 16.4% for outreach in the school-based program, or slightly more than three times the 5% typically encountered in the Medicaid program for all administrative costs, outreach and otherwise.  The fact that Illinois's outreach costs equaled or exceeded those for total administrative costs (both outreach and non-outreach) in the Medicaid program nationwide supports the rationality of the DAB's conclusion that the costs were unreasonable.  It also reveals the financial outcome of Illinois's choice to test first and determine eligibility second.

1.  *Illinois is not entitled to remand to introduce evidence that Codes C1 and C2 were properly applied.*

Illinois argues in the alternative to remand the proceedings back to the DAB to allow Illinois an opportunity to present evidence regarding what portion of the disallowed costs are allowable under the Board's criteria.  Illinois argues that it "had no reason to anticipate" the Board's decision regarding acceptable descriptions for Codes C1 and C2.  Illinois further argues that because at least some of the costs at issue would be eligible for FFP, it should be allowed to present evidence as to what costs were appropriately claimed.  However, Illinois was given adequate notice of CMS's

disapproval of Codes C1 and C2. CMS never accepted the codes and provided ample notice of its reasons for declining to do so long before the appeal to the Board. Instead of adopting CMS's model codes, or redrafting the Codes C1 and C2 as CMS suggested, Illinois chose to remain focused upon testing first and determining Medicaid-eligibility second. Illinois continues to argue in favor of what it feels is the "best" way to reach out to Medicaid-eligible students– a way that CMS never supported as a necessary and efficient way to further Medicaid's outreach goals. As a result, Illinois had sufficient opportunity to present its arguments to CMS and the Board. Moreover, Illinois cites no authority supportive of the position that even when a district court finds that an agency's decision is neither arbitrary nor capricious and was supported by substantial evidence, that remand is appropriate. To the contrary, under the APA, courts may remand to the agency only if there is legal error or if the agency has failed to explain its decision. *FPC v. Idaho Power Co.*, 344 U.S. 17, 20 (1952); *Camp v. Pitts*, 411 U.S. 138, 143 (1973). There was no legal error in the agency's decision and the agency fully explained its decision. Therefore, Illinois's request for remand is denied.

Based upon the aforementioned, the DAB's decision to uphold CMS's disallowances of costs under Codes C1 and C2 was not arbitrary or capricious and was supported by substantial evidence. Accordingly, Plaintiff's summary judgment motion is denied and Defendant's summary judgment motion is granted.

      B.      <u>The DAB's decision to deny Illinois's claims under Codes E2 and F2</u>

In Decision No. 2021, the DAB upheld the SPMP disallowances because Codes E2 and F2 were pervasively flawed and Illinois's claims were unreasonable and excessive. 6402 AR 2 (DAB No. 2021). CMS did not rely upon the Codes' wording when it denied Illinois's administrative claim, but instead, CMS's denial was based solely upon its November 2002 decisional letter in

which it disallowed reimbursement at the enhanced rate for SPMP school-based administrative activities as a matter of policy.[6]  Illinois argues that the DAB decision should be reversed as arbitrary and capricious.  Alternatively, Illinois requests remand because it was not given the opportunity to present evidence on what portion of its costs were eligible for FFP.

The DAB's conclusion that Codes E2 and F2 were pervasively flawed was not arbitrary and capricious.  The DAB set forth three bases for its decision that the Codes were flawed.  First, the DAB concluded that Codes E2 and F2 allowed LEAs to claim enhanced reimbursement simply when an SPMP was "utilizing her medical expertise" *in general* as opposed to seeking enhanced reimbursement only for functions that required "that level of medical expertise in order to be performed *effectively*." 6402 AR 17 (DAB No. 2021); 50 Fed. Reg. at 46,656 (emphasis added).  Illinois does not argue that the DAB's interpretation of the regulation was error, but rather, that it was a new policy not relied upon by CMS in its disallowance letter.  Nevertheless, the agency's interpretation of the regulation is rational and this Court cannot disturb the agency's interpretation of the regulation so long as it is rational— even if the court prefers an alternative interpretation.  *Indiana Dep't of Pub. Welfare*, 686 F. Supp at 694.

Under the regulation, states may receive 75-percent FFP only if "the expenditures are for activities that are directly related to the administration of the Medicaid program; if the SPMP has "professional education and training in the field of medical care or appropriate medical practice; if the SPMP holds "positions that have duties and responsibilities that require those professional medical knowledge and skills"; and if the SPMP and supporting staff are in "[s]tate-documented

---

[6] As discussed herein, the Codes' wording and the excessive nature of Illinois's claims, however, were addressed by CMS on appeal as alterative and independent grounds to uphold its disallowance of Illinois's claims.  6402 AR 135-42, 162-69.

employer-employee relationship[s]" with the Medicaid agency. 42 C.F.R. § 432.50(d)(1)(i)-(iv) (2007). The regulation's preamble states that SPMP must posses "that level of medical expertise in order to be performed *effectively*." 50 Fed. Reg. at 46,656. Reading the regulation together with the regulatory preamble and the overall requirement that states may only receive FFP for administrative activities that the Secretary finds "*necessary*" for "the *proper* and *efficient* administration of the State plan" further supports the agency's interpretation that the enhanced rate of 75% should only be given with the state establishes that medical expertise is necessary to perform the activity *effectively* as opposed to simply requiring that SPMP perform it generally. *See* 42 U.S.C. § 1396b(a)(2),(7); *see also* 50 Fed. Reg. at 46,656 (emphasis added). Concluding otherwise would allow states to seek enhanced reimbursement for all activities of SPMP even if they weren't necessary for the proper administration of the state plan. Here, the agency's interpretation is not plainly erroneous or inconsistent with the regulation and where the agency's interpretation of its regulation is at least as plausible as competing ones, there is little, if any, reason not to defer to its construction. *Thomas Jefferson*, 512 U.S. at 517. Accordingly, the agency's interpretation of the regulation is rational. *Id.*; (a court must give substantial deference to an agency's interpretation of its own regulations).

Second, the DAB concluded that the activity descriptions in Codes E2 and F2 for SPMP activities were similar to the activity descriptions in E1 and F1 for non-SPMP activities such that they could permit non-SPMP activities to be claimed at the enhanced rate. Again, enhanced rate reimbursement may only be claimed for activities of SPMP and their directly supporting staff and Illinois bore the burden of making a "clear showing" that "all claimed costs" met the applicable reimbursement requirements. 42 U.S.C. §1396b(a)(2)(A); *see also* 42 C.F.R. §433.15(b)(5) (2007);

*see also Illinois Dep't of Children & Family Servs.*, DAB No. 1530, 1995 WL 503955 at *19.

Comparing the plain language of Codes E2 and F2 and E1 and F1 supports the rationality of the DAB's decision to deny enhanced rate reimbursement:

**Code E1 (non-SPMP at regular reimbursement)**  **Code E2 (SPMP at enhanced reimbursement)**

| Code E1 (non-SPMP at regular reimbursement) | Code E2 (SPMP at enhanced reimbursement) |
| --- | --- |
| "Referring students and their families for necessary medical health, mental health, or substance abuse services" covered by Medicaid<br><br>"Making referrals for and/or scheduling EPSDT screens."<br><br>"Making referrals for appropriate immunizations..." | "Making determinations for referring students for necessary medical health, mental health, dental health, or substance abuse services" covered by Medicaid.<br><br>"Making specific medical referrals for and/or coordinating medical or physical examinations and necessary medical/mental health evaluations that require medical knowledge and expertise." |
| "Gathering any information that may be required in advance of these referrals." | "Gathering any specific medical information that requires the use of the persons medical knowledge that may be required in advance of these referrals." |
| "Providing follow-up contact to ensure that child has received prescribed medical/mental health services." | "Monitoring and providing follow-up contact to ensure that a child has received the prescribed medical service for a health problem..." |
| "Communicating with the family to explain EPSDT health-related information, when such communication is not part of the follow-up to a direct service." | "Sharing results of screens or a student's evaluation and the need for any diagnostic or treatment services, which may be required as a result of a medical condition identified during the student's EPSDT screen." |

HHS Mtn, p. 14; 6402 AR 337, 341.

Because the codes for SPMP were so similar to those of non-SPMP, it was reasonable for the DAB to conclude that the SPMP codes were flawed in that they captured activities that did not require SPMP skills. 6402 AR 18 (DAB No. 2021). Moreover, it is reasonable to conclude that enhanced reimbursement is inappropriate if the same activity can be effectively and efficiently

performed by a non-SPMP.[7]  Put another way, if a non-SPMP can perform the function, then the

state cannot show that it was "necessary" for the "proper and efficient for the administration of the

State plan."  See 42 U.S.C. §1396b(a)(2)(A); see also 42 C.F.R. §433.15(b)(5)(2007).  Thus, the

DAB's conclusion that non-SPMP and SPMP descriptions were similar and could encourage non-

SPMP activities to be claimed at the enhanced rate is not unreasonable.

Additionally, the DAB argues that Codes E2 and F2 are pervasively flawed because they are

over-broad in that they encompassed activities beyond the scope of traditionally recognized SPMP

administrate activities– namely, medical services of SPMP that cannot be claimed at the enhanced

rate.  6402 AR 18 (DAB 2021).  The DAB's conclusion that Codes E2 and F2 captured medical

services in addition to administrative services was rational.  For example, the wording of E2 and F2

descriptions shows how the codes depart from permissible SPMP administrative activities and

capture direct observations and diagnoses of a child:

> Monitoring and providing follow-up contact to ensure that a child has received the prescribed medical service for a health problem and to provide feedback as to whether further treatment or modification of existing treatment is required.  *For example, observing whether side effect may appear and whether symptoms remain and then referring for further treatment, if indicated.*

> *Explaining to other practitioners and teachers results of diagnoses or other EPSDT screens,* or a student's evaluation *and the need to any diagnostic or treatment services*, when there is a need for a medical professional to explain the nature of the condition and respond to medical questions.

---

[7]  As the party requesting enhanced reimbursement, Illinois bore the burden of proving entitlement to the enhanced FFP and to explain why the same tasks could require medical expertise in some instances and not in others. S*ee Illinois Dep't of Children & Family Servs*., DAB No. 1530, 1995 WL 503955 at *19.  Illinois does not argue that it met its burden of proof, but rather, contends that it had no opportunity to do so at the appellate level, and therefore, requests remand.  As articulated below, Illinois had an opportunity to present  evidence that the activities claimed under E2 and F2 met the regulatory requirement, or– at a minimum– Illinois could have and should have raised any concerns its had regarding procedural unfairness after it received CMS's alternative arguments raised in its response brief and before Illinois filed its reply.

*Sharing results of screens or a student's evaluation and the need for any diagnostic or treatment services, which may be required as the result of a medical condition identified during the student's EPSDT screen.*

The above E2 and F2 activity code language supports the rationality of the DAB's conclusion that the codes capture expenses that are "an integral part or extension of a direct medical or remedial service, such as patient assessment, patient education, counseling, development of the medical portion of an IEP or IFSP, or another physician extender activities." *See Medicaid and School Health: A Technical Assistance Guide* (Aug. 2007). Such services are properly paid for as part of the payment made for the medical or remedial services and not at the enhanced rate for SPMP administrative services. *Id.* For example, observing whether side effects may appear and whether symptoms remain could reasonably be construed as patient assessment; explaining the results of diagnoses or EPSDT screens could reasonably be construed as counseling or patient education; and sharing results of screens and advising students of the need for diagnostic or treatment services which may be the result of a medical condition identified during the EPSDT may reasonably be construed as patient counseling or assessment.[8] Accordingly, the DAB's conclusion was rational.

Finally, the DAB concluded that Code E2 was pervasively flawed because it was vague. For example, the Board critiqued Code E2 which covers "making determinations for referring students for necessary medical health, mental health, dental health or substance abuse services covered by Medicaid/KidCare." The Board stated:

"While this might conceivably encompass a proper Medicaid administrative activity (such as making a determination about medical necessity for a referral requiring prior

---

[8] As with its other bases, the DAB criticized Illinois for failing to produce evidence that its claims did not capture medical services. Again, Illinois does not argue that it produced sufficient evidence, but rather that its codes were appropriate and that it wasn't afforded ample opportunity to present evidence at the appellate level. For the reasons stated below, Illinois's arguments could have been addressed before the Board and remand is not appropriate

authorization), the absence of any description of what type of determination is meant, or who can properly make such a determination, and of how it supports Medicaid administration subjects the description to potential misuse. Thus we disagree with Illinois that it has carefully crafted its claiming codes to capture only allowable SPMP activities."

6402 AR 18-19 (DAB No. 2021). As worded, Code E2 could capture non-SPMP activity and medical services, and therefore, the Board reasonably required Illinois to meet its burden of proof by producing evidence that Code E2 was precise enough to ensure that LEAs properly applied it.[9]

Finally, CMS produced substantial evidence that Illinois's SPMP claims were unreasonable and excessive. Outside of the school setting, administrative costs for SPMP constitute only a small portion of Medicaid's costs. For example SPMP administrative costs for 2003 amounted to only 1.87% of administrative costs for Illinois's Medicaid program. 6402 AR 733. However, Illinois's claims for school-based SPMP administrative costs constituted 18.99% of its total school-based administrative costs. *Id.* In other words, in the school setting, SPMP claims were over 10 times greater than in the general Medicaid program, with nearly one in every five dollars of administrative costs allegedly requiring the use of a medical professional. 6402 AR 19 (DAB No. 2021). Moreover, Illinois demanded $23,807,081 in federal reimbursement for school-based SPMP administrative claims when its SPMP administrative claims for the entirety of its Medicaid program totaled only $4,652,365. 6402 AR 773. Accordingly, Illinois's school-based SPMP costs accounted for 83.65% of all SPMP administrative costs and were "five times the amount of SPMP claims for the general Medicaid program" despite the fact that school-based services amounted to less than 10

---

[9] Here again, however, Illinois argues for remand to afford it an opportunity to present such evidence to the Board. For the reasons stated below, Illinois received adequate notice of CMS's alternative arguments, and therefore, was afforded the opportunity to present evidence before the Board. Illinois failed to object to procedural unfairness or ask for more time during the proceedings below waiving these arguments. Finally, the DAB's decision is neither arbitrary nor capricious and was not legal error. Therefore, remand is inappropriate.

percent of Medicaid services generally. Therefore, the DAB's conclusion that Illinois's costs were unreasonable and excessive was supported by substantial evidence and went beyond costs generally recognized as necessary for the performance of the grant and the benefit received by the program. *New York State Dep't of Soc. Servs.*, DAB No. 1636, 1997 WL 733948 at *8.

Accordingly, the DAB's conclusion that Codes E2 and F2 were pervasively flawed and that Illinois's claims were unreasonable and excessive was neither arbitrary nor capricious.

1. *Illinois is not entitled to remand to submit additional evidence that Codes E2 and F2 were properly applied.*

Illinois argues that even if its Codes were pervasively flawed, it was not afforded an opportunity to prove to the Board that the LEAs applied the Codes appropriately. As such, Illinois asks this Court to remand the proceedings to allow it an opportunity to present evidence supporting its claims to the Board. Illinois believes it is entitled to remand with regard to CMS's denial of its SPMP claims under E2 and F2 because the DAB departed significantly from CMS's decisional letter. In other words, Illinois claims that it had no notice that it would be required to produce evidence that Codes E2 and F2 were properly applied during the appeal process.

Although CMS's decisional letter denying Illinois's claims under E2 and F2 relied solely upon the November 2002 decisional letter, CMS argued that Codes E2 and F2 were flawed and that Illinois's costs were excessive as alternative and independent grounds supportive of its decision to disallow Illinois's claims. 6402 AR 135-42, 162-69.[10] Indeed, even before briefing occurred at the administrative level, CMS advised Illinois that its SPMP claims were "grossly inflated and unreasonable," and that the disallowance would "be defended on this additional ground as well."

_____

[10] Illinois concedes that it was permissible for CMS to argue alternative grounds for upholding its denial of SPMP claims at the appellate level. Reply, p. 21.

6402 AR 404; 6412 AR 633.  Illinois's opening brief stated that "if CMS chooses to defend the disallowance on this basis, Illinois will address the issue in its reply brief."  6402 AR 87.  Accordingly, Illinois had notice that CMS intended to raise and did in fact raise alternative grounds to the Board supporting its decision.

Illinois does not dispute that wording of Codes E2 and F2 as well as the excessive nature of its claims was addressed, albeit briefly, in CMS's Response brief and before the DAB.  Reply, p. 17.  Nor does Illinois dispute that it bore the burden of making a "clear showing" that "all claimed costs" met the applicable reimbursement requirements.  42 U.S.C. §1396b(a)(2)(A); *see also* 42 C.F.R. §433.15(b)(5) (2007); *see also Illinois Dep't of Children & Family Servs.*, DAB No. 1530, 1995 WL 503955 at *19.  However, Illinois argues that because CMS's alterative grounds were raised for the first time in the Response, remand is still appropriate because Illinois would not have had ample opportunity to gather evidence before its Reply brief was due.  Illinois' arguments are unpersuasive because Illinois waived these issues by failing to object in the administrative proceedings below.  *Myron v. Chicoine*, 678 F.2d 727, 733 ( 7th Cir. 1982) (Ordinarily an appellate court will refuse to consider questions not presented in administrative proceedings below.); *See also United States v. L. A. Tucker Truck Lines, Inc*., 344 U.S. 33, 37, 73 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice."); *see also Wood v. Thompson*, 246 F.3d 1026, 1033 (7th Cir. 2001) (Plaintiff waived his policy arguments because he did not rely on them before the ALJ or the Medicare Appeals Council).  If Illinois believed that it needed additional time to gather evidence to support its claims it should have asked for more time

or raised an objection during the administrative appeal process.  Rather, when asked whether it was satisfied with the state of the record and arguments before the Board, Illinois stated "We are happy for the state to leave it as it is.  We feel like we've had a full opportunity today to discuss everything."  Tr. at 176.  Accordingly, Illinois was given adequate notice and failed to sufficiently address these matters before the Board nor did Illinois object or ask for more time to respond.  The DAB's decision was adequately explained and was not legal error.  Therefore, Illinois's request for remand is denied.

## VI.      Conclusion and Order

For the reasons stated, the Plaintiff's Motion for Summary Judgment is denied and the Defendants' Motion for Summary Judgment is granted.

So ordered.

_____

Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date:   March 28, 2008